**In the Matter of ANCHOR STEEL, INC., Debtor.**

**ANCHOR STEEL, INC., Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 87–1985–8B1.
Adv. No. 94–334.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 25, 1995.

David W. Steen, Tampa, FL, for plaintiff.

Mary Apostolakos Hervey, U.S. Dept. of Justice, Washington, DC, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for consideration upon the Motion for Summary Judgment filed by the Debtor in the above captioned case. This Court has considered all arguments and evidence consistent with a ruling on a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The instant matter cannot be characterized as a tribute to the Debtor's nor to the Internal Revenue Service's mathematical prowess. The Court suggests the parties' mathematical conclusions were best foreseen by Lord Bertrand Russell. "Mathematics may be defined as the subject in which we never know what we are talking about, nor whether what we are saying is true." *Recent Work on the Principles of Mathematics,* International Monthly, 1901, vol. 4, p. 84.

The Internal Revenue Service filed its initial Proof of Claim (Claim No. 12) for taxes on August 10, 1987. It filed consecutive Proofs of Claim (No. 14 and No. 15) on September 10, 1987, and September 11, 1987, respectively. Claim No. 14, although filed one day earlier, amended and superseded Claim No. 15, and Claim No. 15 amended and superseded Claim No. 12. This Court overruled Debtor's objection to Claim No. 14, and allowed Claim No. 14 for $171,539.42.[1]

Debtor's proposed Plan provided for the payment of the Internal Revenue Service's priority tax portion of its claim with interest in full in ten (10) equal semi-annual payments. As a result of the Internal Revenue Service's objection to confirmation, the Plan was confirmed requiring twenty (20) equal quarterly payments of the Internal Revenue Service's priority tax claim including interest. The general unsecured portion of the Internal Revenue Service claim was to be treated as a class five claim, which entitled the Internal Revenue Service to a promissory note in the amount of fifty (50) percent of its allowed unsecured claim, payable in five equal installments.

Debtor's Plan was confirmed on July 13, 1988. The Plan provided the first payment to the Internal Revenue Service was to be made November 1, 1988. On September 13, 1988, Debtor was supplied with a letter from the Internal Revenue Service which requested quarterly payments of $8,011.4, purporting to be consistent with the Plan. Unfortunately, the Internal Revenue Service, for reasons unknown to this Court, bungled the amortization of the $147,898 priority claim over a five year period into twenty (20) equal quarterly payments (see footnote 3 *infra*). There is no evidence to suggest Debtors provided a promissory note for the unsecured claim, nor that the Internal Revenue Service received its fifty (50) percent dividend on same.

This Adversary Proceeding was instituted for declaratory relief from the Internal Revenue Service's assertions of an outstanding balance of its priority tax claim remains due. Simply put, the Internal Revenue Service asserts it miscalculated installment payment amounts, which were provided to Debtor by the Service's letter of September 13, 1988. The installment payment amounts which the Service directed the Debtor to pay were insufficient to satisfy the underlying allowed claim owed the Internal Revenue Service. Debtor neither discovered the error nor alerted the Internal Revenue Service, and diligently complied with the requested payments throughout the Plan implementation, notwithstanding the fact these miscalculated payments were in Debtor's favor and would not pay off the allowed priority claim determined by the Court's Order of January 3,

---

1. The Internal Revenue Service's Proof of Claim consists of $147,898 for priority tax claims, and $23,641.42 for penalties which are a general unsecured claim.

1989.[2] Therefore, the issue herein relates to the twenty (20) equal installment payments as to the priority tax claim, and not the general unsecured portion on the Internal Revenue Service's claim.

Debtor made payments under the confirmed Plan as to the priority tax claim in the amount of $8,011.14. There is no evidence accompanying Debtor's Motion for Summary Judgment to support a finding Debtor believed $8,011.14 to be the appropriate payment to satisfy the Internal Revenue Service's claim. Yet, Debtor argues the Internal Revenue Service is estopped from collecting any deficiency payment under the Plan because Debtor relied upon the Internal Revenue Service's figures. The evidence does support a finding the Internal Revenue Service sent Debtor a letter outlining the payment amount, albeit erroneous, as required under the Plan, and Debtor complied with the payments requested by the Internal Revenue Service.

The Internal Revenue Service contends estoppel is not available to Debtor as relates a claim of the United States. For this proposition, the Internal Revenue Service cites *United States v. Vonderau*, 837 F.2d 1540 (11th Cir.1988). In *Vonderau*, the court held a Veteran's Administration loan officer did not have the authority to bind the Veteran's Administration. By analogy, the manager of the bankruptcy unit for the Internal Revenue Service may not bind the Internal Revenue Service without the Secretary of the Treasury or the person delegated to make such decisions. In general, employees of the Internal Revenue Service do not have the authority to bind the United States government. Only the Secretary of the Treasury and those delegated with authority to enter into written agreements may bind the government. I.R.C. §§ 7121(a) and 7122; I.R.S. Delegation Order No. 11 (Rev. 26) (closing agreement authority); I.R.S. Delegation Order No. 11 (Rev. 11) (compromise authority); *Kennedy v. United States*, 965 F.2d 413, 419 (7th Cir.Ill.1992); *McGee v. United States*,

566 F.Supp. 960, 961 (M.D.Fla.1982). This Court finds, as a matter of law, a collection agent does not have the authority to waive indebtedness of a taxpayer. *Id.* Further, there is no evidence to support a finding the Internal Revenue Service intended to settle, compromise, or otherwise modify their rights to payment under the Plan.

Debtor contends the Internal Revenue Service's figures placed it in a worse position as a result of reliance because the quarterly amount paid, although set forth in the Internal Revenue Service's letter, was insufficient to pay off the priority claim. Nonetheless, Debtors reliance claim is without merit. First, this claim was a disputed claim which the Debtor vehemently opposed. This Court overruled Debtor's objection and made a determination of the tax liability as set out in the Internal Revenue Service proof of claim. Debtor knew the amount of the claim, and it is likely Debtor would have recognized any errors that were not in its favor. Here, both parties knew what the correct amount of the priority claim was, and equally, they failed to exercise reasonable diligence to ensure their respective rights under the Plan. Secondly, there is no detriment to Debtor. The fact Debtor now has an outstanding liability does not suggest Debtor did not have the benefit of lower payments over the life of the Plan. In addition, the Internal Revenue Service has not suggested any sanctions or penalties be imposed upon Debtor. The Internal Revenue Service is requesting the amount yet owing without penalty or interest, despite the unlikelihood it would be entitled to penalties or interest for its own misfeasance.

Therefore, Debtor owes an additional amount of the priority tax liability. The question remains as to what amount Debtor must pay. It should be noted there is no credibility in the Internal Revenue Service's figures or its suggestion the prior error was caused by the use of twenty four (24) payments rather than the Plan's required twenty (20).[3] Oddly enough, the evidence supports a

---

**2.** This Court has jurisdiction to determine this issue as it relates to the terms and implementation of the Plan.

**3.** There does not appear to be any consistent usage of figures in the instant matter by either party. The Plan simply sets out the priority tax claims shall be paid over five years, on a quarterly basis at ten percent simple interest. The

finding the Internal Revenue Service has made another error in Debtor's favor. Debtor actually paid $160,222.80, over the five year period on the priority tax liability. This Court calculated the amount in which the payments should have been to be $195,075.60 (interest on priority claim included), or a remaining liability of $34,852.80. The Internal Revenue Service's pleadings state remaining liability to be $32,044.56. Therefore, it is unnecessary for this Court to go beyond the pleadings, and Debtor remains liable for $32,044.56.

With respect to the general unsecured portion of the Internal Revenue Service's claim, there is no evidence to suggest payments were made. The Internal Revenue Service maintains liability continues for that portion of its claim. Therefore, the Motion for Summary Judgment filed by the Debtor should be denied, as factual questions remain as to the general unsecured liability Debtor owes the Internal Revenue Service.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion for Summary Judgment, be and the same is hereby, denied with respect to Debtor's liability for the general unsecured portion of the Internal Revenue Service's claim. It is further,

ORDERED, ADJUDGED AND DECREED the Motion for Summary Judgment is denied as to the priority tax claim and Debtor remains indebted to the Internal Revenue Service for $32,044.56, which represents the remaining portion of its priority tax claim.

DONE AND ORDERED.

amount of the priority tax claims was $147,898. Notwithstanding the Internal Revenue Service states $32,044.56 remains outstanding on the priority claim, the amortization is as follows:

| Year | Balance | Interest | Payment (year) | Payment (Quarter) |
| --- | --- | --- | --- | --- |
| 1 | $147,898.00 | $14,789.80 | $39,015.12 | $9,753.78 |
| 2 | $123,672.68 | $12,367.27 | $39,015.12 | $9,753.78 |
| 3 | $97,024.83 | $9,702.48 | $39,015.12 | $9,753.78 |
| 4 | $67,712.19 | $6,771.22 | $39,015.12 | $9,753.78 |
| 5 | $35,468.29 | $3,546.83 | $39,015.12 | $9,753.78 |
| Total | N/A | $47,177.60 | $195,075.60 | N/A |

Further, if this Court analyzes the Internal Revenue Service's assertion it miscalculated the payments based upon twenty four (24) quarters instead of twenty (20), the payments should have been:

| Year | Balance | Interest | Payment (year) | Payment (Quarter) |
| --- | --- | --- | --- | --- |
| 1 | $147,898.00 | $14,789.80 | $33,958.47 | $8,489.62 |
| 2 | $128,729.33 | $12,872.93 | $33,958.47 | $8,489.62 |
| 3 | $107,643.79 | $10,764.38 | $33,958.47 | $8,489.62 |
| 4 | $84,449.69 | $8,444.97 | $33,958.47 | $8,489.62 |
| 5 | $58,936.19 | $5,893.62 | $33,958.47 | $8,489.62 |
| 6 | $30,871.34 | $3,087.13 | $33,958.47 | $8,489.62 |
| Total | N/A | $55,852.83 | $203,750.83 | N/A |

While mathematical computations of claims are usually not this Court's forte, the figures herein are believed to be superior to those asserted by the parties.